**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRICKSY H.,<br><br>*Plaintiff*,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of the Social Security Administration,<br><br>*Defendant*. | Case No. 1:23-cv-16412<br><br>Hon. Beth W. Jantz |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bricksy H.[1] brought this action under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The parties consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). *See* Dkt. 7. For the reasons stated below, Plaintiff's Motion for Summary Judgment (Dkt. 15) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is GRANTED. The Commissioner's decision is affirmed.

**BACKGROUND**

Bricksy applied for DIB and SSI on February 15, 2017, alleging she became disabled on April 1, 2015, due to depressive disorder, anxiety disorder, panic disorder, agoraphobia, and post-traumatic stress disorder (PTSD). *See* Certified Admin. Record (R.) 102–03 (Dkt. 12). The Social Security Administration denied Bricksy's claim initially on September 6, 2017, and upon

[1] Pursuant to Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff by her first name and the first initial of her last name.

reconsideration on October 13, 2017. R. 121–22, 147–48. At Bricksy's request, an administrative law judge (ALJ) conducted a hearing on June 28, 2019. *See* R. 17–101. The ALJ denied Bricksy's claim in a written opinion dated July 31, 2019. *See* R. 1155. Bricksy challenged the ALJ's decision by filing suit in this Court. On September 30, 2022, this Court issued an order concluding that the ALJ had not sufficiently analyzed the opinion of Dr. Susan Lim, M.D., one of Bricksy's treating physicians, and remanded the matter to the Social Security Administration for further proceedings. *See* R. 1154–64.

The same ALJ conducted a new hearing on September 5, 2023. *See* R. 1107–36. The ALJ denied Bricksy's claim in a written opinion dated September 27, 2023. *See* R. 1078–98. Bricksy bypassed the Appeals Council and filed suit in this Court, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review. *See* 20 C.F.R. § 416.1484(a), (d); *Carolyn M. v. O'Malley*, No. 20-cv-50404, 2024 WL 2801655, at *1 (N.D. Ill. May 31, 2024), *aff'd sub nom. Matthiscyk v. Bisignano*, No. 24-2488, 2025 WL 2835768 (7th Cir. Oct. 7, 2025).

The ALJ applied the five-step analytical process required by 20 C.F.R. § 404.1520. At Step 1, the ALJ concluded that Bricksy had not engaged in substantial gainful activity since the alleged onset date. R. 1080. At Step 2, the ALJ concluded that Bricksy had the severe impairments of depressive disorder, bipolar disorder, anxiety disorder, and PTSD, and the non-severe impairments of gallbladder issues, hypertension, alcohol abuse (in remission), diabetes mellitus, steatosis of the liver, hyperlipidemia, a BMI of 33, vitamin D deficiency, and menorrhagia. R. 1081. At Step 3, the ALJ determined that Bricksy's impairments, alone or in combination, did not meet or medically equal one of the Social Security Administration's Listings of Impairments. *See* R. 1082–84.

Before Step 4, the ALJ determined that Bricksy had the residual functional capacity (RFC) to perform a full range of work at all exertional levels, with the following limitations:

> The claimant can understand, remember, and carry out simple work instructions. The claimant is able to sustain the necessary attention and concentration in 2 hour increments throughout the day to sustain simple job duties assuming typical work-day breaks. The claimant can make simple work-related decisions. The claimant can respond appropriately to supervision, and have occasional contact with co-workers and the general public. The claimant can work in a routine work setting and is able to deal with occasional changes. The claimant should not perform fast-paced production work or work with strict production quotas (such as when a machine is establishing the pace) but can work with end of day goals. The claimant can perform no customer service work and no team or tandem work tasks.

R. 1084; *see also* R. 1084–96.

At Steps 4 and 5, the ALJ concluded that Bricksy could not perform her past relevant work as a machine tender, assembler, sales attendant, and sandwich maker, but that there were jobs of significant numbers in the national economy that she could perform, such as the representative occupations of kitchen helper (approximately 107,000 jobs in the national economy), cook helpers (approximately 23,800 jobs), and order picker (approximately 3,600 jobs). R. 1096–97. Based on these findings, the ALJ concluded that Bricksy was not disabled during the relevant period. R. 1098.

## STANDARD OF REVIEW

The Court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence. *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024). Substantial evidence "'means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019)). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Scrogham v. Colvin*, 765 F.3d 685, 695 (7th Cir. 2014). The Court cannot let the Commissioner's decision stand if it lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539

(7th Cir. 2003); *see also* 42 U.S.C. § 405(g). But the Court "'will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it.'" *Warnell*, 97 F.4th at 1052–53.

**DISCUSSION**

Bricksy raises two arguments against the ALJ's decision: first, that the ALJ misapplied the treating physician rule to discount the opinions of Bricksy's psychiatrist, Dr. Lin, and Bricksy's therapist, Supriya Monan, MSW, LSW; and second, that the ALJ's RFC assessment does not adequately accommodate her asserted deficits in the ability to sustain the on-task, interactive, and attendance requirements of full-time work. The Court disagrees, as follows.

**I. Opinions of Dr. Lin and Ms. Monan**

Bricksy's treating psychiatrist, Dr. Lin, completed a mental residual functional capacity statement in May 2018 that identified several potentially work-preclusive impairments. *See* R. 758–61. Among other limitations, Dr. Lin opined that Bricksy's limited ability to maintain attention and concentration for extended periods of time, perform activities within a schedule, maintain regular attendance, and be punctual and within customary tolerances would preclude performance of work for 15% or more of an eight-hour workday. R. 759. Dr. Lin further opined that several other limitations—including Bricksy's limited abilities to sustain an ordinary routine without supervision, work in coordination with or in proximity to others without distraction, complete a normal workday and workweek without interruptions from psychologically-based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods—would also preclude Bricksy from performing work for 15% or more of an eight-hour workday. R. 759. Dr. Lin concluded that Bricksy would likely be off task more than 30% of the workday and absent from work more than six days a month due to her mental impairments. R. 760.

Bricksy's therapist, Ms. Monan, offered a similarly pessimistic view. In a document titled "Report by Case Manager or Therapist," Ms. Monan opined that Bricksy's limitations markedly restrict her daily activities, socialization, and ability to sustain concentration and attention. R. 762–63. She stated that Bricksy is unable to leave her home at times due to extreme anxiety and depression, she has panic attacks and anger outbursts, and her intrusive thoughts make it very difficult to sustain attention and concentration. R. 762–63. Ms. Monan opined that Bricksy is "unable" to function in a normal workplace setting. R. 763.

The ALJ gave these opinions little and limited weight, respectively. Bricksy takes issue with that treatment, but the ALJ's explanations for discounting Dr. Lin's and Ms. Monan's opinions were adequate. Under the regulations governing Bricksy's claim (filed on February 15, 2017), a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is "well-supported" by medical findings and "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c);[2] *see Gerstner v. Berryhill*, 879 F.3d 257, 261 (7th Cir. 2018). If a treating physician's opinion is not given controlling weight by an ALJ, the ALJ must determine what weight it merits by considering the following factors: (1) the length, nature, and extent of the treatment relationship; (2) the frequency of examination; (3) the physician's specialty; and (4) the consistency and supportability of the opinion. 20 C.F.R. § 404.1527(c); *Gerstner*, 879 F.3d at 263.

The ALJ's opinion includes such sufficient reasons. The ALJ noted that at the time that Dr. Lin wrote her opinion in May 2018, to which the ALJ gave little weight, Bricksy had been under

[2] This "treating physician rule" has been rescinded for claims filed after March 27, 2017 "to eliminate the 'controlling weight' instruction." *Kaminski v. Berryhill*, 894 F.3d 870, 874 n.1 (7th Cir. 2018) (comparing 20 C.F.R. § 404.1527(c), for claims filed before March 27, 2017, with 20 C.F.R. § 404.1520c, for claims filed on or after March 27, 2017).

her care for only four monthly appointments in March, April, July, and August 2017. "[C]onsidering the little treatment Dr. Lin had provided at that time," the ALJ explained that Dr. Lin's opinion "really does not offer much guidance in terms of work limits." R. 1092. This was proper because the Social Security Administration's regulations instruct an ALJ to look at the length and frequency of treatment. *See* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

The ALJ also noted that Dr. Lin's opinion included the language "she says," which indicated to the ALJ that the opinion was an improper vehicle for Bricksy's self-reporting limitations. R. 1092; *see also* R. 759 (opinion of Dr. Lin) ("says she . . ."). This too was a proper consideration because "medical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004).

The ALJ next explained that neither Dr. Lin's own treatment notes nor the other medical evidence in the record corroborated Dr. Lin's conclusions. R. 1092. For example, Dr. Lin stated that Bricksy suffered from agoraphobia, which prevented her from leaving the house to attend her appointments. But Dr. Lin also acknowledged that Bricksy attended at least 11 on-site appointments with her therapist (or at her therapist's office, with other staff members) at the same time that she was under Dr. Lin's care, which undercut Dr. Lin's opinion that Bricksy's agoraphobia was so debilitating as to prevent her from leaving the house to work. R. 1092. Likewise, the ALJ pointed out that (1) Dr. Lin's opinion that Bricksy's memory was failing was inconsistent with multiple intact memory findings on exam; and (2) Dr. Lin's opinion that Bricksy had significant learning difficulties was not supported by evidence in the record of a confirmed learning disorder,

enrollment in special education courses or an individualized educational plan, or difficulty in learning generally, and indeed was undercut by the facts that Bricksy's "literacy level has been described as proficient" in both a self-reporting questionnaire and records from the Josselyn Center, and that she "has spent periods homeschooling her son." R. 1092–93 (citing R. 806, 1369, 1583, 1590, 1606, 1641, 1648, 1654, 1737, 1742, 1752, 1758, 1936, 1942, 1948). The ALJ also pointed to the fact that Bricksy's records from high school showed poor grades but no evidence of an IEP or enrollment in special education courses. *See* R. 1092–93 (citing R. 359–67, 796, 824, 1369). This analysis was adequate because the regulations instruct ALJs to consider the supportability and consistency of a treating source's opinion with the other evidence in the record. *See* 20 C.F.R. § 404.1527(c)(3), (4).

As to Ms. Monan's opinion, to which the ALJ gave limited weight, the ALJ noted that at the time Ms. Monan wrote her opinion in June 2018, she had only seen Bricksy for two total months of treatment, spread over the course of two years. R. 1093. The ALJ also noted that there was little to no explanation of what Ms. Monan meant by describing Bricksy as having "marked" limitations, and that Ms. Monan's opinion as to Bricksy's inability to leave her home was undercut by her medical visits, meetings at her son's school, and visits to the park and stores. R. 1094. These were all proper considerations, as well, as the ALJ was required to evaluate Ms. Monan's opinion based on the "[l]ength of the treatment relationship and the frequency of examination," 20 C.F.R. § 404.1527(c)(2)(i), and how well Ms. Monan explained her opinion, *see id.* § 404.1527(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). The ALJ also properly noted that Ms. Monan's opinion that Bricksy was "unable" to work was an issue reserved to the Commissioner and thus warranted no weight or further consideration. R. 1093–94; *see Kristine H. v. Kijakazi*, No. 20-cv-04718, 2022 WL 910584,

at *8 (N.D. Ill. Mar. 29, 2022) ("[A] physician's statement that a claimant is unable to work is an issue reserved to the Commissioner and is 'neither valuable nor persuasive to the issue of whether [a claimant is] disabled.'") (quoting 20 C.F.R. § 404.1520b(c)(3)(i)). The ALJ also acknowledged that Ms. Monan opined that Bricksy experienced "various symptoms associated with being around various people, which have in fact been consistently reported throughout the period under consideration." R. 1094. The ALJ explained that those "symptoms associated with social contact have been sufficiently accommodated by the residual functional capacity, as she is limited to significant social restrictions," R. 1094, including only "occasional contact with co-workers and the general public" and "no customer service work and no team or tandem work tasks," R. 1084.

None of Bricksy's arguments to the contrary are persuasive. First, she faults the ALJ for pointing out that Dr. Lin's opinion was written with the assistance of a case manager who asked Bricksy to describe her "worst day," which the ALJ cited as evidence that Dr. Lin's opinion was written "to aid [Bricksy] in getting benefits, rather than a well-supported and reasoned assessment of her abilities." R. 1092; *see* Dkt. 15 at 10. However, the ALJ did not dismiss Dr. Lin's opinion solely on this basis, but instead offered a reasoned explanation of why Dr. Lin's opinion was inconsistent with the bulk of the evidence. For example, the ALJ explained that the severity of the limitations reflected in Dr. Lin's opinion was not fully consistent with Dr. Lin's own limited treatment notes and other evidence in the record, which indicated that, although Bricksy had depressed mood and constricted affect, she also had clear speech, logical thought process, cooperative behavior, average fund of knowledge and fair language and judgment. R. 1092. The ALJ also considered the fact that medical records described Bricksy in 2017 as regularly displaying avoidant eye contact, while later regularly describing her eye contact in 2018 as good, thereby suggesting that her ability to interact with others was improving during that time period. R. 1092 (citing R.

910, 924, 938, 941, 953, 1493, 1495, 1497, 1827, 1829, 1831). And the ALJ pointed out that Dr. Lin's opinion of worsening memory was inconsistent with multiple intact memory findings on exam. R. 1092 (citing many pages of the record). All of this was proper under the regulations, which required the ALJ to assess Dr. Lin's opinion for its supportability and the sufficiency of its explanation, *see* 20 C.F.R. § 404.1527(c)(3), and its consistency with the record as a whole, *see id.* § 404.1527(c)(4), and not merely to accept a medical opinion that recites at least in part a claimant's subjective complaints of her condition, *see Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints.").

Second, Bricksy argues that even if she is capable of attending appointments, leaving the house with her son, and other daily functioning, that does not establish her ability to engage in full-time work. *See* Dkt. 15 at 10–11. But that is not what the ALJ said. The ALJ actually acknowledged that "occasional meetings with school officials is not necessarily fully analogous to the demands of full-time work," but explained that "it indicates that the claimant's actual level of functioning, despite her stress and anxiety, does not appear to be as reduced as her fears suggest." R. 1094. Thus, the ALJ did not engage in the "textbook false equivalency" of which Bricksy faults her. Dkt. 15 at 10.

Finally, Bricksy contends that her cognitive abilities continue to worsen, in contrast with the ALJ's finding that her asserted learning disabilities are not work-preclusive. Dkt. 15 at 11. In support of this argument, Bricksy points without further explanation to a Disability Determination Explanation, which lists a learning disability (secondary, severe) as one of her impairments, and the ALJ's first and second written decisions. *See* Dkt. 15 at 11 (citing R. 106, 157, 1092–93). But the Disability Determination Explanation does not cite any evidence for this notation, so it is not

clear from where this disability identification came, nor does the Explanation offer any assessment as to how that impairment might affect Bricksy's RFC. *See* R. 106. It simply lists a learning disability as one of Bricksy's impairments. *Id*.

Although the ALJ did not expressly address this Disability Determination Explanation, an "ALJ need not . . . provide a 'complete written evaluation of every piece of testimony and evidence.'" *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005). Instead, the ALJ's obligation is to not "ignore a line of evidence supporting a finding of disability." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021). The ALJ satisfied that obligation here, because (as explained above) she did consider whether Bricksy had a learning disability diagnosis or other indicia along these lines. The ALJ explained that Bricksy "alleged that she has a learning disorder, but there is no evidence of this" in the record. R. 1081. "For example," the ALJ reasoned, "there is no evidence that the claimant was actually in special education or had an IEP." *Id*. The ALJ further wrote that, although Bricksy had "many absences and variable but often poor grades" in high school (from 2001 to 2006), her literacy level was described in 2017 "as proficient." R. 1081–82 (citing R. 359–67, 796, 824, 1369). The ALJ also reasoned that "there is little specific detail . . . or other documentation reflecting any studies testing regarding specific learning difficulties." R. 1082. And, the ALJ noted that Bricksy "has had the mental capacity to homeschool her child at times, which . . . involved directly teaching her son educational topics." R. 1083.

Additionally, Bricksy herself does not: (1) explain how the Disability Determination Explanation should have changed the ALJ's decision not to give Dr. Lin's or Ms. Monan's opinions controlling weight; nor (2) identify any other objective evidence—such as evidence of testing or an initial or primary diagnosis of a learning disability, rather than just statements from physicians whom she informed that she had a learning disability—that the ALJ might have missed. *See* Dkt.

15 at 11; *Britney S. v. Berryhill*, 366 F. Supp. 3d 1022, 1028 (N.D. Ill. 2019) ("If there is evidence to support Plaintiff's case, it's up to his attorney to direct the court to it.").

Thus, the Court finds no error in the ALJ's explanations of the weight she gave to these treating physicians' opinions.

**II. RFC**

Bricksy next argues that the ALJ's RFC fails to adequately accommodate Bricksy's asserted deficits in her ability to sustain the on-task, interactive, and attendance requirements of full-time work. A claimant's RFC represents the maximum she can do despite her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). An ALJ must base her determination of a claimant's RFC on all relevant evidence in the record, including the claimant's medical history and findings, the effects of treatment, reports of daily activities, and medical opinions. 20 C.F.R. § 404.1545(a)(3); SSR 96–8p, 1996 WL 374184, at *5. When determining a claimant's RFC, an ALJ must consider all medically determinable impairments, including those that are not severe. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). An ALJ must also consider all the effects and limitations resulting from those impairments. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) ("When determining an individual's RFC, the ALJ must consider all limitations that arise from medically determinable impairments."); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("An ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation."). However, "an ALJ need only include limitations [in the RFC] that are supported by the medical record." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022).

Bricksy argues that Dr. Timothy J. Sterzik, Psy.D., the state agency psychological consultant, Dr. Lin, and Ms. Monan all opined that she would be "extremely limited in her ability to perform and complete work-related tasks within the context of a normal work environment." Dkt.

15 at 14 (citing R. 718–23, 758–61, 762–63). The Court finds no reversible error in the ALJ's treatment of these opinions, however. As discussed above, the ALJ properly supported her decision to discount Dr. Lin's and Ms. Monan's opinions, and she otherwise accommodated the limitations identified in Ms. Monan's opinion where they were consistent with the rest of the record. *See* R. 1094.

As to Dr. Sterzik, the ALJ assigned his opinion "[s]ome weight." R. 1095. Dr. Sterzik noted that Bricksy's cognitive abilities appeared to be grossly intact but with difficulties with sustained mental effort and concentration, mathematics, abstract reasoning, general knowledge, and working memory. R. 1095. The ALJ noted, however, that Dr. Sterzik "did not provide an opinion as to the degree of difficulties such that it would more fully inform what the most [Bricksy] could do despite her impairments." R. 1095. So the ALJ next looked to Dr. Sterzik's examination findings. She noted that, according to these findings, Bricksy demonstrated a logical and coherent thought process, was fairly easily engaged but notably anxious, and reported that she could cook light meals and complete most household chores. R. 1095. The ALJ also acknowledged Dr. Sterzik's notation that Bricksy's anxiety "may" have impacted the cognitive screening of the examination, and also acknowledged Dr. Sterzik's indication that Bricksy's ability to complete work-related activities on a sustained basis appeared impaired due to difficulties with memory, concentration, poor stress management, and difficulties relating to people in a work environment. R. 1095. But again, the ALJ explained that these findings were of limited value, because "despite noting difficulties, [Dr. Sterzik] did not provide an opinion as to the degree of difficulties such that it would more fully inform what the most [Bricksy] could do despite her impairments." R. 1095; *see Suide v. Astrue*, 371 F. App'x 684, 690 (7th Cir. 2010) (doctor's evaluation "did not include a *functional* assessment of [the claimant's] abilities, nor did she opine about any limitations [the claimant's]

impairments may have caused, so her report could not be used to support specific limitations included in [the claimant's] residual functional capacity.").

The ALJ also explained how some of the identified limitations were "not sustained throughout the record and it also does not seem to prevent unskilled work, but it would be problematic for complex work and even sustaining detailed work." R. 1095 (citing R. 646, 790, 805, 818, 1019, 1918, 1920). Additionally, the ALJ acknowledged Dr. Sterzik's assessment that Bricksy's anxiety and her asserted history of learning problems were "the main reasons" for her limitations, but the ALJ explained that "there is no confirmation that the claimant has a learning disorder at all." R. 1095–96 (citing R. 359–67, 1367–73). As discussed above, the ALJ's decision not to credit the assertion that Bricksy suffered from a learning disorder was justified. The ALJ thus gave Dr. Sterzik's opinion some weight, to the extent that it was consistent with the other evidence of record relating to her anxiety.

Based on the foregoing, the ALJ discussed Dr. Sterzik's opinion sufficiently, and the RFC includes limitations that are consistent with Dr. Sterzik's opinion that Bricksy experienced anxiety disorder. *See, e.g.*, R. 1084 (limiting Bricksy to sustaining the necessary attention and concentration in two-hour increments throughout the day and to simple job duties, and precluding her from performing fast-paced production work, work with strict production quotas, customer service work, and team or tandem tasks). The ALJ thus satisfied her obligations to not "ignor[e] an entire line of evidence that supports a finding of disability," *Deborah M.*, 994 F.3d at 788, and to "consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation," *Terry*, 580 F.3d at 477. Additionally, Bricksy does not offer an explanation—as was her burden—of how or why Dr. Sterzik's opinion supports her contentions that she cannot sustain full-time work and that the RFC should have included greater restrictions. *See*

Dkt. 15 at 13–16; *Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) ("[W]e cannot reasonably expect an ALJ to 'intuit' a functional limitation from the whole record, nor can we look at the record anew to draw one out. [Claimant] bears the burden of showing that she had impairments that affected her ability to work."). Additionally, it is not clear that Bricksy could rely on Dr. Sterzik's opinion to the extent she claims, given the lack of actual functional assessment the ALJ identified in the opinion. *See* R. 1095 ("[D]espite noting difficulties, the examiner did not provide an opinion as to the degree of difficulties such that it would more fully inform what the most the claimant could do despite her impairments."); *see, e.g.*, *Suide*, 371 F. App'x at 690 (finding that a doctor's report could not be used to support specific limitations in the RFC because the evaluation notes did not include a "*functional* assessment" of the claimant's abilities, or any opinion about the limitations that claimant's impairments may have caused).

Given all this, the Court finds no error in the ALJ's RFC.

**CONCLUSION**

Plaintiff's Motion for Summary Judgment (Dkt. 15) is DENIED, and the Commissioner's Motion for Summary Judgment (Dkt. 18) is GRANTED. The Commissioner's decision is affirmed.

SO ORDERED.

DATED: September 1, 2026

HON. BETH W. JANTZ
U.S. Magistrate Judge